Filed 10/14/24  In re L.F.A. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re L.F.A. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B335632 (Super. Ct. Nos. J073164, J073165) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>K.R. et al.,<br><br>    Defendants and Appellants. | |

K.R. (Mother) and G.R.A. (Father) appeal from the juvenile court order terminating their parental rights as to their daughters, L.F.A. and L.H.A. (the children), and selecting

adoption as the permanent plan.  (Welf. & Inst. Code,[1] § 366.26.)
They contend the court erred when it found inapplicable the
parental-benefit exception (§ 366.26, subd. (c)(1)(B)(i)).[2]  Father
asks that we reverse the order terminating parental rights or
order the juvenile court to hold a new hearing.  Mother asks that
we reverse the order terminating parental rights, and that we
order the juvenile court to order guardianship or hold a new
hearing.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

L.H.A. was detained when she was five days old and L.F.A.
was 10 months old.  Our earlier opinion, which affirmed the
denial of Mother's motion for modification of termination of her
reunification services and removal of custody, outlines the facts
through the date of that order.  (*In re L.F.A.* (Aug. 19, 2024,
B331953) [nonpub. opn.] 2024 WL 3853651.)  Except for three
months, the children lived with their paternal aunt and her
partner throughout the dependency proceedings.

Father was wanted on felony warrants and was a fugitive
from April 2022 until he was arrested in January 2024.  He
appeared for the first time in the dependency case in Ventura
County later that month.

The parents appeared with counsel at the section 366.26
hearing in February 2024.  Neither parent presented evidence.
Petitioner, the Ventura County Human Services Agency (HSA),

[1] Subsequent statutory references are to the Welfare and
Institutions Code.

[2] The court also found inapplicable the sibling-relationship
exception.  (§ 366.26, subd. (c)(1)(B)(v).)  The parents do not
challenge this ruling on appeal.

submitted on its reports.  HSA recommended that parental rights be terminated so the children could be freed for adoption by the de facto parents, their paternal aunt and her partner.  Counsel for the children and for the de facto parents agreed.  Mother and Father asserted the parental-benefit exception and asked the court to select guardianship rather than adoption.

The court found that the children were likely to be adopted and that reasonable services were offered or bypassed for Mother and Father.  It also found the parental-benefit exception did not apply, terminated Mother and Father's parental rights, and selected adoption as the permanent plan.  (§ 366.26, subd. (c)(1)(B)(i).)

## DISCUSSION

The parents contend the juvenile court erred when it failed to apply the parental-benefit exception to bar adoption as the permanent plan.  We disagree.

After reunification services have been terminated, the court sets a section 366.26 hearing " 'to select and implement a permanent plan for the child.' "  (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).)  The court has the options of adoption with termination of parental rights, guardianship, permanent relative care, or foster care.  (§ 366.26, subd. (b).)  The statutory preference is for adoption.  (§ 366.26, subd. (b)(1).)  The parental-benefit exception allows the court to choose an option other than adoption " 'in exceptional circumstances.' "  (*Caden C.*, at p. 631.)

The parental-benefit exception has three elements: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child."  (*Caden C.*, *supra*, 11 Cal.5th at p. 631; § 366.26, subd.

3

(c)(1)(B)(i).)  The parent must establish these three elements by a preponderance of the evidence.  (*Caden C.*, at p. 629.)  The juvenile court correctly articulated these elements at the section 366.26 hearing.

We review for substantial evidence the first two elements—consistent visitation and benefit from continuing the relationship.  (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-640.)  For the third element—detriment to the child if the relationship is terminated—we review for substantial evidence factual determinations such as "specific features of the child's relationship with the parent," "the harm that would come from losing those specific features," and "the benefit of adoption."  (*Id.* at p. 640.)  We review for abuse of discretion the "delicate balancing" of "the harm of losing the relationship against the benefits of placement in a new, adoptive home."  (*Ibid.*)  We presume the judgment is correct; the parents have the burden to affirmatively demonstrate error.  (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1161.)

*Visitation and contact*

The first element, visitation and contact, was established as to Mother.  During the course of the case, her visitation status with L.F.A. and L.H.A. fluctuated between monitored, supervised, and unsupervised.  HSA provided a detailed summary of Mother's regular participation in weekly, four-hour supervised visits.  The court found that Mother took advantage of every opportunity to visit the children.

During the dependency in Los Angeles County, Father was consistently late for visits and canceled visits.  His last official visit with the children was in February 2022.  In May 2023, the court ordered that Father "have no contact and no visitation

4

pending further court order." In February 2024, Father requested supervised visitation, which the court denied.

At the section 366.26 hearing, the court noted there was "some evidence" Father had unauthorized contact with the children, including when he was a fugitive, but the court did not receive any updates about that contact and did not know its extent. The limited record regarding recent visits by Father supports the juvenile court's conclusion that it could not find Father had regular visitation and contact with the children.

The court noted that Mother had some responsibility for the confusion about Father's contact with the children because she misrepresented that she had no contact with him. The parents contend that Mother's dishonesty was irrelevant to her visitation and an improper consideration that "carried through to the balance of [the court's] analysis." The parents have not shown that the court's observation regarding Mother's dishonesty demonstrates a failure to apply the correct legal standard.

*Beneficial relationship*

Regarding the second element, the juvenile court stated that "the parent must show the child has a substantial, positive, emotional attachment to the parent . . . implying that the child would benefit from continuing the . . . relationship." This is a correct statement of the law. (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) The court correctly stated the relevant factors: "the age of the child; the portion of the child's life spent in the parent's custody versus with the current caregivers; whether or not while in the parent's custody the time spent was positive or negative as far as the interaction between the parent and child; and the child's particular needs." (See *id.* at p. 632.)

5

During her visits Mother brought the children snacks and art supplies, and played, read, and sang with them. She hugged the children and told them she loved them. We commend Mother for her consistent visitation and her attention to the children.

At the end of some visits, L.F.A. wanted to stay with Mother and did not want to return to the de facto parents. But HSA's general assessment was: "The children have fun during these interactions with their mother but they do not show any distress leaving visits." HSA also noted that in January 2024, the children appeared "angry, frustrated, defiant and throwing tantrums throughout visits" and "no longer receptive when the mother redirects behavior."

The juvenile court found that the children at times displayed "strong feelings" during the transfers between the de facto parents and Mother. The court concluded this behavior indicated the children knew that something was "not right" and "not normal," and "clearly comes down on the negative side of the ledger" regarding Mother's interaction with the children. The court stated that Mother allowing the children contact with Father, knowing he was a fugitive and addicted to drugs, would not create a positive environment or a positive relationship for the children. We conclude substantial evidence supports the juvenile court's finding that Mother did not meet her burden to show the children had "a substantial, positive, emotional attachment to the parent." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.)

Father made an offer of proof that if he were to testify, he would state that he lived with L.F.A. from birth to 10 months old; he played with her, taught her, helped feed her daily, changed her diapers, and put her to bed; he has "a special and

6

unbreakable bond" with L.F.A., and a "strong bond" with L.H.A. He would testify that he visited both L.F.A. and L.H.A. during the dependency and prepared for the visits by bringing snacks and activities for them. Although Father did not testify, it appears the parties allowed the court to consider these representations. But the lack of documentation of Father's contacts with the children supports the juvenile court's implied conclusion that Father did not establish a beneficial relationship.

The parents contend the juvenile court improperly considered that the de facto parents "have on a day-to-day basis provided for the needs of the children for most of their lives." In our view, no error has been shown. "[T]he portion of the child's life spent in the parent's custody" is a proper consideration. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) L.H.A. was detained when she was five days old and L.F.A. was 10 months old. They were continuously in the care of the de facto parents for the 47 months thereafter, with the exception of only three months when they were in Mother's care.

This case is unlike *In re B.D.* (2021) 66 Cal.App.5th 1218, upon which the parents rely. It was unclear there whether the juvenile court based the termination of parental rights on improper factors, including the parents' failure to complete their reunification plans, because the court "did not have the benefit of the guidance provided in *Caden C.*," which was issued after the appeal was filed. (*Id.* at pp. 1228, 1230.) The juvenile court there considered the grandmother's provision of the children's daily needs in the context of the inability of the parents to fulfill that role. (*Id.* at p. 1229.) But here, the juvenile court explicitly applied the standards of *Caden C.* and considered the de facto parents' provision of the children's day-to-day needs in the

7

context of the nature of the parents' relationship with the children.

The juvenile court here also stated: "And I think the law is pretty clear that a parent who seeks to invoke the parental-benefit exception must do more than demonstrate frequent and loving contact or an emotional bond with the children or that the parent and child find their visits pleasant; the parent must show that he or she occupies a parental role in the child's life." We do not agree that this misstates the law. HSA told the court it did not claim the parental-benefit exception required that either parent fill a parental role, and correctly noted that *Caden C.* is silent on that point. *Caden C.* did not prohibit consideration of whether the parent occupied a "parental role." (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 319-321 [the court's finding that the father had not occupied a parental role was not error where the court explained what it meant with evidence establishing that a beneficial relationship did not exist]; *In re A.L.*, *supra*, 73 Cal.App.5th at p. 1157 ["the strength and quality of the parent's relationship with the child, including whether that parent has a parental role, is a relevant consideration" and *Caden C.* does not state otherwise].)

*Detriment*

The juvenile court also found that Mother had not established by a preponderance of evidence that terminating her parental rights would be detrimental to the minors "when balanced against the benefit of a new adoptive home." As to Father, the court stated it was unable to find detriment based on the limited evidence.

The HSA report states, "The girls have been Court Dependents since they were babies. The stability and benefit of

8

adoption far outweigh[] any detriment that the termination of parental rights may have on the children." The parents did not present a bonding study, expert opinion, or other evidence to negate this conclusion. (Cf. *Caden C.*, *supra*, 11 Cal.5th at pp. 632-633 & fn. 4 [expert psychological testimony and bonding studies often important sources].)

"'A showing the child derives *some benefit* from the relationship is not a sufficient ground to depart from the statutory preference for adoption.'" (*In re A.G.* (2020) 58 Cal.App.5th 973, 995.) "Friendly or affectionate visits are not enough." (*In re G.H.* (2022) 84 Cal.App.5th 15, 25.) "'To overcome the preference for adoption and avoid termination of the natural parent's [parental] rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed.'" (*Ibid*.) No such showing was made here.

To evaluate detriment, "courts need to determine . . . how the child would be affected by losing the parental relationship— in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C.*, *supra*, 11 Cal.5th at p. 633.) For example, "the effects might include emotional instability and preoccupation leading to acting out, difficulties in school, insomnia, anxiety, or depression." (*Ibid*.) No evidence was presented here that any such harm would occur.

This case is in sharp contrast to *In re Scott B.* (2010) 188 Cal.App.4th 452, upon which the parents rely. The minor there had a "'substantially disabling'" diagnosis of autism. (*Id*. at p. 455.) He lived almost nine of his 11 years with his mother. (*Id*. at p. 471.) He was emotionally unstable, repeatedly insisted his

preference was to live with his mother, and his ability to live with the foster mother was based on his belief that his mother would be included in his life. (*Ibid.*) The court-appointed special advocate noted that his visits with his mother were "an important part of his life" (*id.* at p. 460), his relationship with his mother was "very close," and "it would be detrimental for their relationship to be disrupted" (*id.* at p. 471). In contrast here, no evidence was presented that termination of parental rights would be detrimental to the children.

"A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination' " ' " such that " ' " 'no judge could reasonably have made the order.' " ' " (*Caden C.*, *supra*, 11 Cal.5th at p. 641.) The juvenile court here did not abuse its discretion when it determined that the children's best interest was served by severing parental rights to provide a safe and stable home through adoption.

DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED</u>.


BALTODANO, J.


We concur:


GILBERT, P. J.              YEGAN, J.


10

Gilbert A. Romero, Judge

Superior Court County of Ventura

_____

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant K.R. (Mother).

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant G.R.A. (Father).

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.